UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ELIZABETH LOGAN | ) | Case No. 07-12564-SSM |
| | ) | Chapter 7 |
| Debtor | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is a pleading filed by The Marbury Law Group, PLLC ("Marbury") (Doc. # 134) objecting to the trustee's proposed distribution and seeking to enforce a judgment, or alternatively an attorney's lien, against a $96,954 distribution that would otherwise be paid to its former client, 6450 Kedleston, LLC ("Kedleston"), the largest creditor in this case. The trustee filed a response opposing payment to Marbury. (Doc. # 135). Kedleston filed a pleading entitled "Supplemental Submission," (Doc. # 137) which supported the trustee's position and attached a copy of pleadings in which Kedleston's principal, Bernard J. Carl, asserted malpractice claims against Marbury with respect to both this case and unrelated litigation involving an internet web site. At the hearing, the court ruled that the final report would be approved (including the distributions to creditors other than Kedleston) but took under advisement Marbury's motion to enforce its judgment, or alternatively its claimed lien, against the sums to which Kedleston was entitled. For the reasons stated, the court determines that enforcement of the claimed attorney's lien is appropriate.

1

Background

Elizabeth Logan ("the debtor") filed a voluntary petition in this court on September 17, 2007, for relief under chapter 7 of the Bankruptcy Code, and received a discharge on December 31, 2007.  Gordon P. Peyton was appointed as the trustee.  Among the creditors listed on the debtor's schedules was 6450 Kedleston, LLC, which was shown as having a disputed unsecured claim in the amount of $1.7 million.   John F. Mardula of the law firm of Roberts, Mardula & Wertheim entered an appearance on Kedleston's behalf on October 22, 2007.  Kedleston and the chapter 7 trustee then jointly conducted Rule 2004 examinations—which generated a number of controversies—to determine the existence of possible assets.  Eventually, the trustee and Kedleston jointly filed an adversary proceeding to revoke the debtor's discharge and seeking to pierce the corporate veil of her company, Myotonology, Inc. and to recover from the debtor and others money and property allegedly diverted from the bankruptcy estate or concealed from the trustee. *Peyton v. Logan*, No. 08-1541-SSM.  In March 2009, Mr. Mardula and his firm were permitted to withdraw as counsel to Kedleston.  The trustee then sought approval of a settlement under which he received $45,000 from a third party and withdrew the objection to the debtor's discharge. (Doc. # 11).  At that point, Kedleston (which had filed an objection by its managing member to the proposed settlement) obtained substitute counsel, who argued the objection.  The court overruled the objection and approved the compromise by order entered May 7, 2009. (Doc. # 17).  Kedleston then filed a motion for reconsideration, which was denied after a hearing.

After the trustee's attorney filed an application for compensation, Kedelston filed a motion to vacate the order approving the settlement. (Doc. # 121).  That motion was withdrawn the following month, and on January 21, 2010, the trustee filed the final report that is currently

before the court. (Doc. # 130).  The trustee reported that he had received gross receipts in the amount of $146,198.13 and had paid administrative expenses of $641.00, leaving $145,557.43 on hand for distribution.  A total of $36,408.03 in compensation and reimbursement of expenses was requested for the trustee and his counsel, with the remaining $109,149.40 to be paid pro rata to the holders of the $849,642.06 in allowed unsecured claims, resulting in a dividend of 12.8 cents on the dollar.  Relevant to the present controversy, Kedelston would receive $96,953.82 on its allowed $754,709 claim.

On February 11, 2010,  Mr. Mardula, on behalf of the Marbury Law Group, PLLC ("Marbury"),[1] filed the "Objection to Proposed Distribution in Trustee's Final Report and Motion to Enforce Judgment or Enforce Attorney's Lien Against the Funds Held by the Trustee for the Benefit of a Creditor, 6450 Kedleston LLC" that is currently before the court.  It alleges that after Marbury withdrew from representing Kedleston, the law firm filed suit against Kedleston for unpaid legal fees in the Circuit Court of Fairfax County, Virginia, and obtained a judgment on May 15, 2009 in the amount of $116,614.90, with interest from May 14, 2009 plus costs.  Although the record is unclear, it appears that some portion of the unpaid fees relates to litigation between the debtor and Kedleston that was brought prior to the filing of the bankruptcy petition. After the final report was filed, Marbury, through Mr. Mardula, sent the trustee a letter on January 22, 2010, asserting an attorney's lien against the proposed distribution to Kedleston.

---

[1] Although the pleading never actually addresses the issue, the court assumes that Marbury is the successor to Roberts, Mardula & Wertheim.

3

Discussion

A.

Marbury has not cited any case in which the holder of a judgment against a creditor was allowed to enforce it against a bankruptcy trustee holding funds to be distributed to that creditor. Marubury asserts, nevertheless, that this court, upon being satisfied that the judgment was proper and has not been satisfied, should—under the rubric of comity and full faith and credit—enforce the judgment by directing turnover of any funds that would otherwise be distributed to the creditor.

It is unquestionably true that this court is required to give full faith and credit to the judgments of state courts. 28 U.S.C. § 1738.[2] But it is one thing to give full faith and credit to a state court judicial determination, *see, e.g., In re Wizard Software, Inc.*, 185 B.R. 512 (Bankr. E.D. Va. 1995) (applying full faith and credit in context of a claim objection), and quite another to say that this court is the proper forum for enforcing a judgment rendered by another court against a party who simply happens to be a creditor in the bankruptcy case. Simply put, if this court would not have had jurisdiction to render the judgment in the first instance, it is difficult to see how it would have jurisdiction to enforce the judgment. This court's jurisdiction under 28 U.S.C. § 1334 is limited to bankruptcy cases, civil proceedings arising under the Bankruptcy

---

[2] 28 U.S.C. § 1738 provides as follows:
> The records and judicial proceedings of any court of any ... State, Territory or Possession ... shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form. Such ... records and judicial proceedings ..., so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possession as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

Code, civil proceedings arising in a bankruptcy case, and civil proceedings related to a bankruptcy case.  There can be little doubt that this court would not have had jurisdiction under 28 U.S.C. § 1334 to entertain Mardula's suit to adjudicate its claim against Kedleston for unpaid attorney's fees.  Put another way, this court's jurisdiction is limited to determining the rights of the debtor and issues affecting administration of the estate, not the rights of third parties against creditors of the estate.

There is, of course, a procedure by which a judgment creditor in Virginia may obtain and enforce a lien against money owed to the judgment debtor by a third party.  The delivery to the sheriff of a writ of fieri facias ("fi. fa.") creates a lien against property, such as rights to payment, that cannot be levied on.  Va. Code Ann. § 8.01-501.  Such a right can be enforced against the party who owes the judgment debtor money by garnishment.  Va. Code Ann. § 8.01-511.  However, garnishment is essentially a suit by the judgment creditor against the third party to enforce the execution lien.  Enforcement of such a lien against funds held by a bankruptcy trustee, however, runs afoul of two bars.  The first—an issue to which the court will return—is the automatic stay, which, among other things, prohibits any act to obtain possession of, or exercise control over, property of the bankruptcy estate. § 362(a)(3), Bankruptcy Code.  The second is the bar against suing a trustee except with the permission of the court that appointed him.  *Barton v. Barbour*, 104 U.S. (14 Otto) 126, 26 L.Ed.672 (1881); *In re Yatko*, 416 B.R. 193, 201 (Bankr. W.D.N.C. 2008) ("A garnishment, attachment or supplemental proceeding against the bankruptcy trustee cannot be maintained without relief from the stay and/or prior leave of the appointing bankruptcy court.").  Of course, where no injury to the bankruptcy estate would result, relief from the stay might well be appropriate, especially as the trustee has identified no

great burden or inconvenience that would be imposed upon him in simply writing a distribution check to Marbury rather than Kedleston. In the present case, however, Marbury has not made a predicate showing that it has complied with the Virginia procedure for obtaining an execution lien against the funds payable to Kedkeston. But in any event, whether to grant relief from the automatic stay is discretionary with the court. In the past this court has on occasion allowed holders of unpaid child support claims to enforce the claim against funds that would otherwise be returned to the *debtor*. But it is one thing for the court to allow enforcement of a child-support claim—which enjoys favored status in bankruptcy—against the debtor, and quite another to get involved in commercial disputes between a *creditor* and the creditor's creditor. While the burden on the trustee in this one instance of making payment to Marbury rather than Kedleston is arguably minimal, trustees handle hundreds if not thousands of cases in a year, and a general practice of allowing this court to be used as a collection forum for third-party claims against creditors would not only greatly add to the burdens of trustees, but would delay the timely closing of estates while the court adjudicated the rights of third parties who have no direct claim against the debtor or the bankruptcy estate.

B.

Marbury argues, however, that it is not merely the holder of a judgment against Kedelston but additionally under Virginia law has a valid attorney's lien which bankruptcy courts have enforced in similar circumstances. Kedelston's claim against the debtor arises from a defaulted contract to purchase real estate. Virginia law recognizes a statutory lien in favor of an attorney for his or her fees against the causes of action the attorney is hired to prosecute. Specifically, § 54.1-3932, Code of Virginia, provides in relevant part as follows:

6

>A. Any person having or claiming a right of action sounding in tort, or for liquidated or unliquidated damages on contract or for a cause of action for annulment or divorce, may contract with any attorney to prosecute the same, *and the attorney shall have a lien upon the cause of action as security for his fees for any services rendered in relation to the cause of action or claim*. When any such contract is made, and *written notice of the claim of such lien is given to the opposite party*, his attorney or agent, any settlement or adjustment of the cause of action shall be void against the lien so created, except as proof of liability on such cause of action.

(emphasis added). In *Metro Machine Corporation v. Berkley Shipbuilding & Drydock Corporation (In re Ward)*, 32 B.R. 318 (Bankr. E.D. Va. 1983), Judge Bostetter of this court acknowledged that an attorney who had represented the *debtor* in an action to collect sums owed on a promissory note would be entitled to a lien, based on the value of the services the attorney had provided prior to the bankruptcy filing, against amounts subsequently collected by the trustee. *Id.* at 321-22. And in *Military Circle Pet Center #94, Inc. v. Docktor Pet Holdings, Ltd. (In re Military Circle Pet Center #94, Inc.)*, 181 B.R. 282 (Bankr. E.D. Va. 1994), Judge Tice of this court held, "A lien perfected *prepetition* under the Virginia attorney lien statute . . . is valid in bankruptcy. . . . if the statute was followed by the attorney." *Id.* at 287 (emphasis added). In that case, a law firm had represented a creditor (Docktor Pet Holdings, Inc.) in asserting claims against the debtor in its chapter 11 case. *Id.* at 284. The creditor was also represented by another law firm as its general counsel. *Id.* Several months after the chapter 11 case was commenced, a settlement was reached between the creditor, the debtor, and the debtor's principals. *Id.* One component of the settlement was a promissory note executed by the debtor and the principals in favor of the creditor. *Id.* That note was then endorsed to the creditor's general counsel, which began receiving the payments in payment of its fees. *Id.* at 285. Approximately nine months later, the firm that had represented the creditor in the bankruptcy case asserted an attorney's lien

7

against the remaining payments due under the note. *Id.* The debtor then commenced an adversary proceeding to determine who was entitled to the note payments. *Id.* The court held that the claimed attorney's lien had not been properly perfected because notice of the lien was not given to the *debtor*—which the court determined to be the "opposite party" within the meaning of the statute—at the time the settlement was reached. *Id.* at 288.[3] Although at one point the opinion seems to limit recognition of attorney's liens in bankruptcy to those perfected prepetition, the subsequent analysis signals a willingness to recognize liens arising post-petition, provided timely notice is given to the opposite party. In any event, neither *Metro Machine Corporation* nor *Military Circle Pet Center* is exactly analogous to the present case. The former involved a lien against the *debtor's* entitlement to funds, while the latter involved primarily a dispute between two law firms who had represented a creditor.

Be that as it may, the court can see no reason, at least in principle, why an attorney who has represented a creditor in a bankruptcy case should not be entitled to recognition of a statutory lien for his or her unpaid fees against the distribution to be paid to the client, provided timely notice is given to the trustee and the client, and with any dispute as to who should receive the payment being decided by the bankruptcy court. The trustee, however, argues that any notice sent after the filing of the bankruptcy case would be ineffective to perfect a lien, since it would constitute "an act to obtain possession of property of the estate or of property from the estate" in violation of the automatic stay. *See* § 362(a)(3), Bankruptcy Code. Certainly, this would be true

---

[3] Although Judge Tice determined that the lien had not been perfected, he also found that the general counsel was not a holder in due course of the note. Under the bankruptcy court's general equity powers, Judge Tice allocated a portion of the note payments to the creditor's bankruptcy attorney, with the balance going to the general counsel. *Id*. at 288.

if the intent were to obtain payment to the disadvantage of other creditors.  Here, however, Marbury is not seeking to make itself a secured creditor in the bankruptcy case and is claiming no greater right to payment from the estate than its former client, Kedleston, already enjoys as an unsecured creditor.  In this respect, sending the notice of attorney's lien is conceptually no greater an interference with the administration of the estate—and thus no more an act to exercise control over property of the estate—than filing an assignment of a proof of claim would be.  *See* Fed.R.Bankr.P. 3001(e)(2), (4).

There is, to be sure, the additional issue that Kedleston's principal has asserted legal malpractice claims against Marbury related to its representation of Kedleston in this case. Kedleston has cited no authority, however, that enforcement of an attorney's lien (particularly when the underlying claim for unpaid fees has been reduced to judgment) is stayed by the mere commencement of a malpractice suit against the attorney.  (Whether the attorney would have an ethical obligation to escrow the funds pending resolution of the dispute is not  before the court, and the court expresses no opinion.)  It goes without saying, of course, that any order directing payment to Marbury is not intended to have preclusive effect with respect to the malpractice claims.

## O R D E R

For the foregoing reasons, it is

**ORDERED:**

1. That portion of the motion seeking to enforce an attorney's lien is granted, and the trustee shall pay to the Marbury Law Group PLLC the distribution that would otherwise be paid to 6450 Kedleston, LLC, on account of its allowed claim in this case.

2. The clerk will mail a copy of this order, or give electronic notice of its entry, to the parties listed below.

Date: _____                    _____
                                                  Stephen S. Mitchell
Alexandria, Virginia                              United States Bankruptcy Judge

Copies to:

John F. Mardula, Esquire
The Marbury Law Group, PLLC
11800 Sunrise Valley Drive, Suite 1000
Reston, VA 20191

Richard D. Carter, Esquire
Richard D. Carter, PLLC
2121 Eisenhower Ave., Suite 300
Alexandria, VA

Gordon P. Peyton, Esquire
Redmon, Peyton & Braswell
510 King Street, Suite 301
Alexandria, VA  22314
Chapter 7 trustee

Robert M. Marino, Esquire
Redmon Peyton & Braswell, LLP
510 King Street, Suite 301
Alexandria, VA 22314
Counsel for the trustee

Frank Bove, Esquire
Office of the United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314

John L. Lilly, Jr., Esquire
The Lilly Law Group, PC
10195 Main Street, Suite I
Fairfax, VA 22031
Counsel for the debtor

Elizabeth Logan
702 Blueberry Hill Road
McLean, VA 22101
Debtor